## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EDGARDO RODRIGUEZ NIEVES, ET AL.<br><br>    Plaintiffs,<br><br>       v.<br><br>CARLOS M. GARCIA, ET AL.<br><br>Defendants | CIVIL NO. 09-cv-01888 (SEC)<br><br>SUBJECT: Civil Rights |

## JOINT CASE MANAGEMENT MEMORANDUM

**To the Honorable Salvador Casellas**
**United States District Judge:**

**COME NOW** Plaintiffs Edgardo Rodríguez Nieves and Lyzette Rodríguez Rodríguez and Defendants Carlos M. García and Guillermo Camba Casas, in their individual and official capacities, through their undersigned attorneys, and most respectfully submit their Joint Case Management Memorandum:

## I. FACTUAL AND LEGAL CONTENTIONS

A.     Plaintiff's Factual and Legal Contentions:

This is a civil action filed by Edgardo Rodríguez Nieves, a career employee of the Banco Gubernamental de Fomento (hereinafter "BGF") of the Commonwealth of Puerto Rico who prior to the filing of the Complaint was being subjected to harassment and diminution in duties to the point of being left with no significant job duties and other conditions that resulted in a work environment unreasonably inferior to the norm for his position.  At that time**,** Plaintiff had suffered a considerable curtailment of his managerial

and supervisory duties, and had been left with only a few routine assignments. Because defendants have engaged in such a pattern of institutional discrimination with a total disregard and abuse of Plaintiff's position it permitted and/or encouraged Plaintiff's subordinates, in turn, to circumvent his authority.   Plaintiff was suspended since August 27, 2009 and up until his discriminatory and illegal termination due to the alleged disappearance of electronic documents in the common files of the Human Resources Department. By letter dated October 21, 2009 addressed to co-defendant Carlos M. García, Plaintiff denounced that he had not been advised of the status of the alleged investigation that was being conducted by the defendants in connection with his alleged misconduct and that he had received no notice of the alleged administrative procedure that was being conducted.   Plaintiff also denounced that he had not been given an opportunity to be heard about the alleged facts.

On January 11, 2010, the BGF held an informal hearing.   Plaintiff's counsels were not allowed to be present and participate in this hearing notwithstanding the fact that defendants were well aware of the existence of the present lawsuit and of the fact that Plaintiff was represented with legal counsel.   Said informal hearing was merely pro forma in nature as   Plaintiff was not provided with the opportunity to examine the documentary evidence on which has alleged violations are based, nor an opportunity to cross examine any witnesses.     The burden of proof was plaintiff was placed on the plaintiff which constitutes a further violation of plaintiff's due process rights.   Following this sham of a hearing, Plaintiff was terminated.

Defendants' actions are consistent with a pattern of political persecution and have been taken simply because Plaintiff is a member of the Popular Democratic Party (hereinafter "PDP").

Plaintiff alleges a violation of his rights under the First Amendment and due process clauses of the Constitution of the United States, as well as under the laws and Constitution of Puerto Rico, and prays equitable relief in the form of ceasing all actions attempted directly or indirectly to curtail his duties, and legal relief in the form of economic and punitive damages, pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1983.  As this is a civil action brought pursuant to the laws and Constitution of the United States, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

The plaintiff, Edgardo Rodríguez, is of legal age, married, a resident of Puerto Rico and a citizen of the United States of America.

He is married to Lyzette J. Rodriguez Rodriguez and together they form a legal conjugal partnership between them, as such his spouse joins this complaint as to all causes of action arising under the laws and Constitution of Puerto Rico.

Plaintiff occupied the position of Vice-president/ Sub-Director of Human Resources and Employment Relations at the Banco Gubernamental de Fomento since June 2nd, 2003 and up until his discriminatory and illegal termination.

Defendant Carlos M. García (hereinafter "García") is the President of the Banco Gubernamental de Fomento.  He was appointed to said position following the 2008 general elections.  He is sued in his individual and official capacities for declaratory, injunctive and monetary relief.

Defendant García is a member of the New Progressive Party.

Defendant Guillermo Camba Casas (hereinafter "Camba Casas") is the Director of Human Resources at the Banco Gubernamental de Fomento.  He is sued in his individual and official capacities for declaratory, injunctive and monetary relief.

Defendant Camba Casas is a member of the New Progressive Party.

At all relevant times, defendants were aware of plaintiff's political affiliation to the PDP.

Plaintiff is a member of the PDP, fact known to defendants at all times relevant to this action.  Examples of Plaintiff's active political participation include, without limitation, the following:  (a) during the year 2008, plaintiff actively collaborated as a fundraiser for the campaign of Alfredo Salazar who ran as candidate for Resident Commissioner under the PDP insignia, and for Aníbal Acevedo Vilá who ran as candidate for Governor of Puerto Rico under said insignia; (b)  In said campaign, Plaintiff also participated in walkabouts and political meetings organized for both candidates and attended by them; (c) during the year 2004, plaintiff actively collaborated as a fundraiser for the campaign of Aníbal Acevedo Vilá who ran as a candidate for Governor of Puerto Rico under said insignia;  (d)  In said campaign, Plaintiff also participated in walkabouts and political meetings organized for both candidates and attended by them(e)  during the year 2000 political campaign, plaintiff actively collaborated as a fundraiser for the campaign of Sila María Calderón who ran as  candidate for Governor of Puerto Rico under said insignia; (f)  during said campaign, plaintiff also participated in walkabouts with her; (g) In 1995, plaintiff was appointed Presidential Delegate of the PDP by the then President of said political party, Hector Luis Acevedo;  (h) During the year 1996 political campaign, Plaintiff worked as Coordinator of the political campaign in the western district of Héctor

Luis Acevedo, who ran as candidate for Governor of Puerto Rico under said insignia; (i) In said political campaign, Plaintiff actively participated in walkabouts and meetings organized for Héctor Luis Acevedo and attended by him, and as a fundraiser for Acevedo's campaign; (j) During the year 1992, plaintiff actively participated in the campaign for José Guillermo Rodríguez who ran as candidate for Mayor of Mayaguez under said insignia; (k) In said political campaign, plaintiff also participated in walkabouts and meetings organized for said candidate; and he was member of said candidate's transition committee; (l) During the year 1992, Plaintiff also actively participated in the political campaign of Victoria Muñoz Mendoza, who ran as candidate for Governor of Puerto Rico under the PDP insignia; (m) During the year 1988, Plaintiff actively participated in the political campaign of Rafael Hernández Colón, who ran as candidate for Governor of Puerto Rico under the PDP insignia.

Prior to the 2008 General Election, Plaintiff was employed with GDB as a career managerial employee, occupying first the position of Sub-Director of Human Resources and Labor Relations from June 2003 to December 2003. In January 2004, he occupied the position of Vice-president/Director of Human Resources and Labor Relations, a trust position, during a PDP Administration up until November 2007. Since then, he occupied the position of Vice-president/Sub-Director of Human Resources and Labor Relations up until his discriminatory and illegal termination.

In the capacity of Sub-Director of Human Resources and Labor Relations, Plaintiff had supervisory responsibility over several employees.

Defendant Camba Casas started to work at the BGF on or about February 17, 2009.

Upon his arrival to the BGF, Camba Casas systematically ignored the Plaintiff and took different measures to prevent him from performing his official job duties.  As a result of those, Plaintiff was systematically deprived of his core functions.  Camba Casas constantly gave direct instructions to Plaintiff's subordinates without consulting the Plaintiff or even informing him.

For example, on or about February 26th, 2009, Camba Casas informed the Plaintiff that an employee under Plaintiff's supervision, Linnette García Nazario, would report directly to him.  From then on, Camba Casas held numerous meetings with Linnette García to which Plaintiff was not been invited, and provided her with instructions that were not communicated to the Plaintiff.  On occasions, Camba Casas addressed work issues with García Nazario, in plaintiff's presence, without Camba Casas even acknowledging plaintiff's presence.

Moreover, García Nazario is performing, with Camba Casas' approval and as per his instructions, duties which are under Plaintiff's direct responsibilities.  For example, García Nazario is now in charge of all human resources and employment relation issues of one of the Bank's affiliates, to wit:   Autoridad de Financiamiento Para la Infraestructura ("AFI").  García Nazario has also been assigned duties related to the revisions of manuals, which also duties that fall within Plaintiff's responsibilities.

On or about August 13th, 2009, during a meeting held with the Union President of AFI's union (Unión Trabajadores Banco de la Vivienda), Mr. José Javier Piñero, defendant Camba Casas openly ignored plaintiff's comments and suggestions.  At one point during the meeting, Camba Casas left in order to take a telephone call, and he asked García  Nazario, a subordinate of the Plainitff, to continue with the meeting

although the Plaintiff was present.  This incident was noted by those present and the embarrassment and humiliation of Plaintiff being passed over deliberately and openly.

Moreover, as per Camba Casas' instruction, Plaintiff is no longer supervising the duties performed by the person in charge of the Human Resources department's archives.

Furthermore, Camba Casas has directly taken over Plaintiff's responsibilities concerning relations with labor unions, relations with directors whom he is called to assist, the representation of GDB in administrative, local and federal courts, the investigation of labor controversies, among others, all of it in open violation of Plaintiff's supervisory functions as stated in his job description, in an effort to humiliate him.

The campaign of harassment fostered by political animus culminated on August 27, 2009, when Plaintiff was suspended from work pending a disciplinary investigation, since Camba Casas has alleged that Plaintiff deleted electronic files from the Human Resources common files, which Plaintiff denies.  Plaintiff was advised that his suspension was for an indefinite period of time.

By letter dated October 21, 2009, addressed to co-defendant García, Plaintiff reiterated to him that he had been suspended since August 27, 2009 pending an alleged investigation and that up to that date he had received no notice of the investigative process that was allegedly being conducted.  Plaintiff also denounced that he had not been granted the opportunity to be heard in connection with the alleged facts, and that he had been placed in a position in which he was totally defenseless against these actions.  Plaintiff further requested from García  to be reinstated back to work within the following five (5) days, and that all political persecution against him

ceased.  Plaintiff also advised García that he would interpret the failure to do so as a denial of his request.

On December 23, 2009, Plaintiff's son was tendered a letter dated December 23, 2009 signed by Camba Casas in which Plaintiff's is accused of having committed several violations and is cited to an informal hearing scheduled for December 30, 2009. Notwithstanding the unreasonable amount of time that plaintiff has been suspended, defendant intended to celebrate this internal hearing on a rush basis.  This retaliatory action against the plaintiff is part of defendants' efforts to humiliate and harassed him. No evidence of the alleged wrongdoings is attached with said letter.

Plaintiffs' counsel sent a letter to the BGF requesting the cancellation of the December 30, 2009, and requesting that the informal hearing be reset for the end of January, 2010 after plaintiff be allowed to conduct extensive discovery.

Plaintiffs' request was mostly denied.  Plaintiff's spouse was tendered a second letter in which Plaintiff was advised that the informal hearing would be held on January 12, 2010 and that it would be presided by the BGF's Legal Advisor.  Defendants' counsel were not allowed to be present at the hearing notwithstanding they were present at the beginning of the hearing and demanded that plaintiff be assisted of the right to legal counsel.  Plaintiff was presented with no evidence in support of defendants' allegations, but to the contrary, was asked to defend himself against them, and was provided with no opportunity to cross examine the Bank's alleged witnesses. Accordingly, the informal hearing was nothing but a pro forma proceeding in further violation of plaintiff's due process rights.  This so-called informal hearing was heard by a BGF employee who was biased against the plaintiff.

Camba Casas' actions demonstrate that there was a concerted plan by the defendants to have Plaintiff removed from his career position.  The stripping of his functions was simply a part of that overall plan.

Prior to his suspension, Plaintiff had requested in writing that Camba Casas' reassign him the job duties which according to his position he is entitled to perform. Camba Casas ignored Plaintiff's request and then proceeded with Plaintiff's suspension and eventually with his discriminatory and illegal termination.

Plaintiff was punished in the exercise of civil rights because he is not a member of the political party that now governs, and that of the defendants.

At all times, all of the actions taken by defendants have been done in conjunction with each other, in a full fledge conspiracy to discriminate against Plaintiff.  Each of the defendants individually and all of them in conspiracy, acting under color of law, have basically ignored plaintiff's permanent career employment rights and curtailed him from carrying out his official duties, thus purposely taking, promoting, allowing, or tacitly acquiescing to the adverse employment actions taken against him on the sole basis of his known political affiliation to the PDP, and in obvious violation to his acquired rights under Puerto Rico Law and the protections afforded to him by the Constitution.

The foregoing evidences that the Defendants, under the color of law of their respective positions, have willfully and/or with deliberate indifference violated the plaintiff's rights under the First and Fourteenth Amendments to the Constitution of the United States (freedom of speech and association and due process).

Defendants have responded with further unconstitutional retaliation following the filing of Plaintiff's Complaint.

As a result of the Defendants' unconstitutional and illegal conduct, plaintiff has been subjected to adverse employment actions, and caused irreparable and continuing harm, emotionally, economically and in his civil rights.

The foregoing evidence that the Defendants, under the color of law of their respective positions, have willfully and/or with deliberate indifference violated the plaintiff's rights under the Constitution and laws of the Commonwealth of Puerto Rico, specifically Sections 1, 4, 6 and 7 of Article II of the Constitution of Puerto Rico; and the Public Service Personnel laws of Puerto Rico; Law No. 184, of August 3, 2004, as amended, P.R. Laws Ann., Tit. 3,; and Articles 1802 and 1803 of the Civil Code, § 5141-5142 of Title 31; law 100 of June 26, 1956.

In Puerto Rico, state employees fall into two general categories: those who hold "career" positions and those who hold "trust" positions. See Costa-Ureña, Et. Al., v. Segarra, Et. Al., _____ (1st Cir. 2009), citing Figueroa-Serrano v. Ramos Alverio, 221 F. 3d 1, 3 no. 1 (1st Cir. 2000).    Trust employees are involved in "policy-making" or render direct services to particular government figures. Costa-Ureña, supra; see also Cruz-Gomez v. Rivera Hernandez, 444 F. 3d 29, 30 n. 1 (1st Cir. 2006). Trust employees are generally of free selection and removal. Career employees, on the other hand, hold permanent positions. Maymi v. P.R. Ports Auth., 515 F. 3d 20, 24 n. 2 (1st Cir. 2008). They must be selected with referenced to merit-based criteria. Costa-Ureña, supra; P.R. Laws Ann. Tit. 3, § 1462b, and may only be removed from their positions for cause and after certain procedures are followed. Id. § 1462e.

The First Circuit Court of Appeals has reiterated that career employees are entitled to the protections of the First and Fourteenth Amendments. Costa-Ureña,

supra;  Rodríguez-Marin v. Rivera Gonzalez, 438 F. 3d 72, 39-80 (1st Cir. 2006)  ("The First Amendment protects the right of public career employees… to engage in political activities without fear of adverse employment actions.")  (citation omitted);  Colon-Santiago v. Rosario, 438 F. 3d 101, 108 (1st Cir. 2006).

In a trilogy of cases, repeatedly applied by the First Circuit, the Supreme Court has determined that the first amendment of the Constitution prohibits state officials from conditioning public employment on the political beliefs and association of public employees.  In the groundbreaking case of Elrod v. Burns, 427 U.S. 247 (1976), the Court reversed two centuries of usage and custom, and decided that a newly elected sheriff could not constitutionally engage in the patronage practice of replacing certain office staff with members of his own party.  The Court reasoned that conditioning public employment on political activity pressures employees to pledge political allegiance to a party with which they prefer not to associate, to work for the selection of political candidates they do not support, and to contribute money to be used to further policies with which they do not support.  This, the Court described, is "tantamount to coerced belief," contrary to the bedrock principles of the first amendment.  427 U.S. at 355.

In particular, the Court determined that the state did not have a legitimate interest in perpetuating patronage practices because these were not the least restrictive means of fostering any legitimate governmental interest in representative government. While the Court acknowledged that the government has a significant interest in ensuring effective and efficient employees, it rejected that "mere difference of political persuasion motivates poor performance" and concluded that the government can ensure employee

effectiveness and efficiency through the less drastic means of discharging or disciplining staff members whose work is inadequate.  427 U.S. at 365-66.

While the Court recognized that the preservation of the democratic process may in some instances justify limitation of first amendment freedoms, it concluded that the "process functions well without the practice, perhaps even better."  Id.  Patronage, the Court asserted, "is a very effective impediment to the associational and speech freedoms which are essential to a meaningful system of democratic government."  427 U.S. at  368-70.  The Court found that government can meet its need for politically loyal employees by the less intrusive measures of limiting political dismissals only to those employees in policymaking positions.  427 U.S. at 367.  The rationale for this exception is the state interest in "the need for political loyalty of employees, not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies presumably sanctioned by the electorate."  427 U.S. at 367.

Four years later, in Branti v. Finkel, 445 U.S. 507 (1980), the court reaffirmed Elrod, and refined its policymaking exception.  There, the Court decided that the first amendment prohibited a newly appointed public defender, a Democrat, from discharging assistant public defenders because they did not have the support of the Democratic Party.  It held that conditioning public employment on the endorsement of the party in power is offensive to the First Amendment given "the coercion of belief that necessarily flows from the knowledge that one must have a sponsor in the dominant party in order to retain one's job."  445 U.S. at 516.  The Court rejected any requirement that dismissed employees prove that they have been changing, either actually or

ostensibly, their political allegiance.   To prevail, the Court provided that public employees need show only that they were not affiliated with the party in power.  Branti v. Finkel, 445 U.S. 507, 517 (1980), citing Elrod v. Burns, 717 U.S. 347, 350 (1976).

In its analysis, the Court reformulated the Elrod policy making exception along mere functional lines, indicating that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position, rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  Branti, 445 U.S. at 518.  The Court has left no doubt that employees that do not engage in policy making or confidential political functions are entitled to the full protection of the first amendment. See Ruttan v. Republican Party, 497 U.S. 62 (1992) (extending first amendment protection to transfers, denial for promotions, and recall after layoff and hiring); O'Hare Truck Services, Inc. v. Northlake, Ill., 518 U.S. 712 (1996) (first amendment protects independent contractors);  Board of Commissioner v. Umbehr, 518 U.S. 668 (1996) (first amendment protects government contractors); Bisbal-Ramos v. City of Mayaguez, 467 F. 3d 16, 22-23 (1st Cir. 2006).

Prior to his suspension, Plaintiff had been subjected to harassment and diminution in duties to the point of being left with no significant job duties and other conditions that resulted in a work environment unreasonably inferior to the norm for his position.   Up until that point, Plaintiff suffered a considerable curtailment of his managerial and supervisory duties, and had been left with only a few routine assignments.   Because defendants engaged in such a pattern of institutional discrimination with a total disregard and abuse of Plaintiff's position it permitted and/or

encouraged Plaintiff's subordinates, in turn, to circumvent his authority. Thereafter, and in a further effort to humiliate him, plaintiff was terminated in total disregard of his constitutional rights.

Plaintiff has identified evidence from which a factfinder could conclude that his job duties are "unreasonable inferior to the norm for the position." Agosto-de-Feliciano, 889 F. 2d 1209, 1217 (1st Cir. 1989). To determine whether an environment is unreasonably inferior, a factfinder should "canvass the specific ways in which the plaintiff's job has changed." See also Rivera-Ruiz v. González-Rivera, 983 F. 2d 332, 335 (1st Cir. 1993); Acosta-Orozco v. Rodríguez-de-Rivera, 132 F. 3d 97, 101 n. 5 (1st Cir. 1997).

The Supreme Court's decision in, Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1974) governs the analysis in political discrimination cases. Under Mt. Healthy, the plaintiff must initially introduce evidence sufficient to indicate that a constitutionally protected activity or status was a "substantial or motivating factor" in the adverse employment decision. If a plaintiff establishes this prima facie case, the burden then shifts to the employer, who at this point may assert "what is commonly referred to as a 'Mt. Healthy defense.". Costa-Ureña, supra, citing Rodriguez-Marin v. Rivera Gonzalez, 438 F. 3d 72, 81 (1st Cir. 2006). In order to establish such a defense, the employer must prove, by a preponderance of the evidence, that it would have made the decision regardless of the employee's protected activity or status. Gonzalez-Pina v. Guillermo Rodriguez, 407 F. 3d 425, 431-32 (1st Cir. 2005) (citing Mt. Healthy, 429 U.S. at 287).

In the instant case, plaintiff was a long term career employee.

- 14 -

Defendants have been personally involved in the adverse employment decisions for reasons that the Supreme Court has left no doubt are proscribed by the first amendment to public officials with power over public personnel decisions. See <u>Agosto de Feliciano v. Aponte-Roque</u>, 889 F. 2d 1209,l219 (1st Cir. 1989) (a substantial alteration in an employee's job responsibilities may constitute an adverse employment action); <u>Bergeron, et. al. v. Andrea Cabral</u>, 560 F. 3d 1; 2009 U.S. App. LEXIS 4653 (1st Cir. 2009) (tinkering with an employee's duties or prerogatives in a way that creates a realistic potential for pecuniary loss may impose substantial pressure on the employee such as to implicate his First Amendment rights.

Plaintiff's spouse is entitled to damages pursuant to the provisions of Article 1802 of the Puerto Rico Civil Code.  See P.R. Laws Ann. Tit. 31, § 5141.

B.   Defendants' Factual and Legal Contentions:

*Defendants' Factual Contentions:*

Plaintiff Edgardo Rodríguez Nieves ("Rodríguez" or "Plaintiff") occupied the position of Sub-Director of Human Resources and Labor Relations of the Puerto Rico Government Development Bank ("GDB") from November 2007 to February 1, 2010, when he was terminated for violating GDP's policies and regulations.

On August, 2009, GDB conducted an internal investigation that revealed that Plaintiff had deleted and/or modified various computer files from the Human Resources' common files without authorization.

On August 27, 2009, pursuant to Sections 9.4.1 and 9.4.2 of GDB's Regulations for Career Employees, Plaintiff was informed of the results of the above-referred internal investigation and was suspended from employment, but not from pay, pending an

external investigation of the issue. GDB hired Xapiens International to conduct the external investigation. On November 2, 2009, Xapiens International confirmed that Plaintiff had deleted and/or modified the above-mentioned files.

At the time of his suspension Plaintiff was under another investigation because he had attempted to obtain a trust position salary increase without authorization from the Classification and Compensation Division during the electoral ban ("veda electoral") period even when he had already been reinstated to a career position.

 On December 22, 2009, pursuant to Article 9, Section 9.4, Sub-Sections 9.4.2, and 9.4.3 of GDB's Regulations for Career Employees, Plaintiff was informed of the results of the above-referred investigations, of the charges GDB had filed against him, and of his right to attend an informal hearing where he was going to have the opportunity to discuss the imputed charges and of refuting them by presenting additional evidence.  The informal hearing was scheduled for December 30, 2009.

By deleting and/or modifying the above-referred files Plaintiff violated Article 7, Section A (1) and (2), Section C (1), Article 9 (E) of GDB's Policy of Conduct and Ethics for Employees and Officials and Regulations 9,10, 47, and 41 of GDB's Manual of General Regulations of May 31, 1991, among others.

By attempting to obtain the alluded salary increase without following GDB's regulations Plaintiff violated Article 6, Section B, Article 9, Sections (A) and (d) of the Policy of Conduct and Ethics for GDB's Employees and Officials, Regulation 41 of GDB's Manual of General Regulation of May 31, 1991, and Article 9, Section 9.3, Sub-Sections 9.3.3 and 9.3.4 of GDB's Regulations for Career Employees, among others.

On December 29, 2009, Plaintiff requested GDB to have his informal hearing rescheduled to another date. On that same date GDB informed Plaintiff' that his hearing had been re-scheduled to January 12, 2010.

On January 12, 2009, Plaintiff attended the informal hearing regarding his violations to GDB's policies and regulations.  The informal hearing was presided by GDB's Legal Advisor Jorge A. Rivera-Febres.  During said hearing Plaintiff had the opportunity to present additional evidence and to refute all the charges that were pending against him.  However, Plaintiff failed to present any evidence that refuted said charges.

After analyzing all evidence in record, including what was discussed during the January 12, 2010 informal hearing, GDB took the decision to terminate Plaintiff effective on February 1, 2010.  By repeatedly and intentionally violating GDB's policies and regulations, Plaintiff acted in total disregard to the effective functioning of GDB. Therefore, Plaintiff was terminated with just cause.

*Defendants' Legal Contentions:*

**A. Plaintiff fails to establish a *prima facie* case of political discrimination under the Civil Rights Act of 1866, 42 U.S.C. §1983**

"In a political discrimination claim under the Civil Rights Act of 1866, 42 U.S.C. § 1983, plaintiffs must demonstrate that defendants deprived them of federally protected rights while acting under color of state law.  They must further establish that they have engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the adverse employment action. "Aguiar-Carrasquillo v. Agosto Alicea, 445 F. 3d. 19,25 (1st Cir. 2006)(internal citations omitted).  Plaintiffs must also show that:  1) they belong to opposing political affiliations; 2) the defendants have

knowledge of the plaintiffs' political affiliations; 3) there are challenged employment actions; 4) there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in the defendants' decisions.  See Peguero-Moronta v. Santiago, 464 F. 3d 29, 48 (1st. Cir. 2006)(internal citations omitted).  "The burden then shifts to defendants to demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Aguiar-Carrasquillo v. Agosto Alicea, supra.

Plaintiff in this case fails to establish a political discrimination claim under 42 U.S.C. § 1983. First of all, Plaintiff cannot establish that Defendants had any knowledge that he belonged to an opposing political affiliation than Defendants while he worked for GDB.  The fact that Plaintiff was employed by GDB prior to the 2008 PR General Elections allegedly under the Popular Democratic Party's Government or that he allegedly attended various Popular Democratic Party's political campaigns do not establish that Defendants had any knowledge that Plaintiff was a member of the Popular Democratic Party.

"In showing the existence of a causal connection, the court has established that a plaintiff cannot prove that a defendant had knowledge of his political affiliation merely through:

> testimony of having seen, or, for that matter, met during routine campaign activity, having been visited by the now incumbent defendant while said defendant was a candidate for the position he now holds, by having held a trust/confidential/policy making position in the outgoing administration, by having political propaganda adhered to plaintiff's car and/or house, or through the knowledge of third parties."

 Negrón Jiménez  v. Rodríguez Adorno, No.: 06-1055 (ADC), 2009 U.S. Dist. LEXIS 18276, (D.P.R. March 9, 2009).

Second, Plaintiff cannot establish that he was suspended and ultimately terminated because he belonged to a different political affiliation than Defendants. Plaintiff was suspended and ultimately terminated strictly for violating GDB's policies and regulations by deleting and/or modifying computer files without authorization and for attempting to receive a trust position salary increase without authorization during the electoral ban period even after he had being reinstalled to a career position. Plaintiff's political affiliation, even if it was different from Defendants', was not a motivating factor in the decision to suspend him and ultimately terminate him.

Therefore, since Plaintiff cannot establish a political discrimination claim in this case under Section 1983, said claim must be dismissed.

## B. Plaintiff fails to establish to establish a political discrimination hostile work environment claim

In order to establish a political discrimination hostile work environment claim, a plaintiff "must prove that: (1) [he or] she belongs to a protected group; (2) [he or she] was subjected to unwelcome harassment; (3) the harassment was based on his or her political affiliation; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." González De Blasini v. Zayas, No. 02-1364 (JAG), 2003 U.S. Dist. LEXIS 15527, (D.P.R. August 7, 2003)(citing Cruz v. Radtec, Inc., 70 F. Supp. 2d. 77, 82 (D.P.R. 1999)).

In this case Plaintiff alleges that he was harassed because of his political affiliation to the Popular Democratic Party. However, Plaintiff cannot establish a political discrimination harassment/hostile work environment claim in this case.

Plaintiff alleges in his Complaint, among others, that he was harassed because he belonged to a different political party than Defendants'.  To support his contentions Plaintiff alleges that he was excluded from meetings by Defendant Guillermo Camba Casas ("Camba"), Director of Human Resources and Labor Relations, that he was denied work, that he was deprived of some of his duties, and that his comments were ignored during a meeting.

In González De Blasini v. Zayas, No. 02-1364 (JAG), 2003 U.S. Dist. LEXIS 15527, (D.P.R. August 7, 2003) plaintiff alleged that she had been harassed because of her political affiliation.  To support her contentions plaintiff there alleged, among other things, that : 1) she had been excluded from meetings;  2) she had been denied work; 3) she had been encouraged to retire or would have been demoted with a lesser salary; 4) and she had heard comments as to whether her office was still occupied.  The Court in that case decided that plaintiff had failed to establish a political harassment claim because she did not establish any specific incident where she was allegedly discriminated and/or harassed because of her political affiliation and because the evidence she presented was not enough to support her claims.

In this case, as in González De Blasini v. Zayas, *supra,* Plaintiff 's  vague and self serving allegations of being excluded from meetings, being denied work, being deprived of some of his duties, and of his comments being ignored during a meeting, do not support a political discrimination harassment/hostile work environment claim.  Even if these allegations were true, which Defendants deny, they could not have created an environment that was sufficiently severe or pervasive to alter the conditions of his employment, which is necessary to prevail in a hostile work environment claim. *See* Pa.

State Police v. Suders, 542 U.S. 129 (2004) (sexual harassment case).   Therefore, Plaintiff' political discrimination harassment/hostile work environment claim must be dismissed.

### C.   Plaintiff's Fourteenth Amendment claim must be dismissed

"The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States guarantees public employees with a property interest in continued employment the right to a pre-termination hearing." Huertas-Morales v. Agosto Alicea, 278 F. Supp. 2d. 164 (D.P.R. 2003)(citing Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).

In the case at bar, Plaintiff, pursuant to GDB regulations, was informed of the charges that had been presented against him prior to his suspension and termination, had the opportunity to attend an informal pre-termination hearing on January 12, 2010, and had the opportunity to refute any charges that had been presented against him during said hearing. GDB followed all the regulations it had to follow prior to suspending and ultimately terminating Plaintiff.   Therefore, Plaintiff fails to establish that GDB deprived him from his employment without due process of law.

### D.   Plaintiff's claim of Equal Protection violation should be dismissed

Plaintiff also alleged a claim of violation to the Equal Protection Clause of the Fourteenth Amendment. However, he has not claimed membership in a protected class or demonstrated that other individuals, similarly situated, were treated differently than him. The lack of these basic doctrinal elements is lethal to his equal protection claim. See Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp., 246 F. 3d 1, 7 - 10 (1st Cir. 2001); Hennessy v. City of Melrose, 194 F.3d 237, 244 (1st Cir.1999); Gilbert v.

City of Cambridge, 932 F.2d 51, 66 (1st Cir. 1991).

Moreover, Plaintiff's claim of violation to the equal protection clause is just a restatement of his claim under the First Amendment. As such, there is little basis or justification for applying equal protection analysis where this type of claim overlaps with a First Amendment claim. See Colon-Medina & Sucesores, Inc. *v.* Custodio, 964 F. 2d 32, 45 (1st Cir. 1992). Thus, there is really no need to engage in an equal protection analysis when this claim has no independent grounds than the same claim of political discriminatory animus. Accordingly, it should be dismissed by this Honorable Court with prejudice.

**E.   Defendants are entitled to qualified immunity in this case**

"The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under Section 1983." *See* Roldán-Plumet v. Cerezo Suárez, 115 F. 3d 58, 65 (1st Cir. 1997). Government officials are entitled to qualified immunity against claims of federal constitutional violations unless (1) "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 129 S. Ct. 8087, 816 (2009)(internal citations omitted)."

As previously explained, Defendants did not violate Plaintiff's federal constitutional rights in this case.   Defendants, as Plaintiff's supervisors, had the authority to suspend him and ultimately terminating him for violating GDB's policies and regulations by deleting and/or modifying computer files without authorization and for attempting to receive a trust position salary increase without authorization during the

electoral ban period even after he had being reinstated to a career position. Plaintiff's alleged political affiliation to the Popular Democratic Party was not a factor in the decision to suspend him and ultimately terminate him.  Therefore, because Defendants had the authority to suspend him and ultimately terminate him and they did not violate any of Plaintiff's federal constitutional rights by doing so, Defendants are entitled to qualified immunity.

### F. Plaintiff is not entitled to any remedy under the Constitution of Puerto Rico or under the Public Service Personnel Laws of Puerto Rico

Plaintiff in this case claims remedies under Sections 1,4, 6 and 7 of Article II of the Constitution of Puerto Rico and under the Public Service Personnel Laws of Puerto Rico, Law No. 184 of August 3, 2004, P.R. Laws Ann. 3 ("Law 184").  Because Plaintiff's claims under Puerto Rico's Constitution and under the Law 184 are based on the same facts as Plaintiff's federal constitutional claims, Defendants' legal arguments under the previous sections are hereby incorporated as a defense to the alleged violations of Plaintiff's constitutional rights under the Constitution of Puerto Rico and under Law 184.

### G. Plaintiff fails to establish a *prima facie* case of political discrimination under Law 100 of June 26, 1956

In order to establish a *prima facie* case of political discrimination under Law No. 100 of June 26, 1956, P.R. Laws Ann. 29 §146, *et seq.*, ("Law 100") plaintiff must establish that: "(1) that there was a prejudicial termination or action; (2) that it was taken without just cause; (3) evidence must be presented indicating the discrimination mode that is linked to the termination." Guillermo Pineda v, Lopito , Ilena & Howie, Inc., 656 F. Supp. 2d 268 (D.P.R. 2009).

As Law 100 lacks a definition of the concept "just cause", the Supreme Court of Puerto Rico determined that the definitions of "just cause" stated in Law No. 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.* ("Law 80") apply.  *See* Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994) and Baez García v. Cooper Labs., Inc., 120 D.P.R. 145, 155 (1987).

The concept of "just cause" is clearly defined in Article 2 of Law 80.   According to this Article, an employee may be terminated with just cause, among others, based on:

> "(c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee." ...

In this case Plaintiff cannot establish a *prima* facie political discrimination case under Law 100 because he was terminated with just cause.  Plaintiff was terminated for repeatedly violating GDB's policies and regulations, which Plaintiff had received a copy of, by deleting and/or modifying computer files without authorization and for attempting to receive a trust position salary increase without authorization during the electoral ban period even after he had been reinstated to a career position.  Plaintiff's alleged political affiliation to the Popular Democratic Party was not a motivating factor in the decision to terminate him.

In any event, individual defendants are not liable as a matter of law under Law 100.

## H.  Plaintiff fails to establish a claim under Articles 1802 and 1803 of the Civil Code of Puerto Rico

Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. 31 §§5141 and 5142 ("Articles 1802 and 1803"), are Puerto Rico's general tort and vicarious liability statutes.  As previously explained, Plaintiff cannot establish in this case that Defendants violated any federal or Puerto Rico law or that he was suspended and ultimately terminated for any other reason unrelated to his repeated violations of GDP's policies and regulations.   Therefore, Plaintiff is not entitled to any damages amount as a matter of facts and law under Articles 1802 and 1803.

## II. FACT AND EXPERT WITNESSES

A.    Plaintiff's Fact Witnesses:

1.    Plaintiff Edgardo Rodríguez Nieves will testify in connection with the allegations stated in the complaint; including, without limitation:   defendants' discriminatory acts, Plaintiffs' political affiliation; defendants' knowledge of his affiliation, and the damages suffered by him, his spouse and conjugal partnership.

2.    Plaintiff's spouse will testify in connection with her damages for emotional pain and suffering as well as co-plaintiff Edgardo Rodríguez Nieves' damages.

3.    Plaintiff will call Mr. José Javier Piñero to testify in connection with plaintiff's job duties; Mr. Camba's treatment of the plaintiff, and other related matters without limitation.

Plaintiffs will announce any additional factual witnesses in due course after the completion of discovery.

As to expert witnesses, Plaintiffs have yet to decide whether they will call expert witnesses at trial.   Plaintiffs will advise the Court and defendants' counsel of this decision in due course.

B.     Defendants' Fact Witnesses:

1.     Carlos M. García
       President of GDB

Mr. García has knowledge of certain Puerto Rico Governmental Development Bank's ("GDB's") policies and regulations, and of reports of other individuals pertaining to the case.

2.     Guillermo Camba Casas
       Director of Human Resources and Labor Relations of GDB

Mr. Camba Casas has knowledge of GDB's policies and regulations, of Plaintiff's terms and conditions of employment while he worked for GDB, of Plaintiff's violations of certain GDB's policies and regulations, and of GDB's reasons for terminating Plaintiff, among others.

3.     Jorge A. Rivera-Febres
       Legal Advisor of GDB

Mr. Rivera-Febres has knowledge of Plaintiff's pre-termination informal hearing, among others.

4.     Dr. Luis A. Sanchez
       Xapiens

Dr. Sanchez has knowledge regarding Computer Forensics Analysis and Final Report, among others.

5.     Miguel Collazo
       Xapiens

Mr. Collazo has knowledge regarding Computer Forensics Analysis and Final Report, among others.

Defendant reserves the right to announce additional fact witnesses. Any additional witness shall be timely announced.

C.    Plaintiff's Expert Witnesses:

As of this date, Plaintiffs have not consulted nor hired expert witnesses.

D.    Defendants' Expert Witnesses:

Defendants may retain the following as experts regarding issues of computer forensic analysis:

1.    Dr. Luis A. Sánchez

2.    Mr. Miguel Collazo

Defendants have not retained expert witnesses at this moment. Defendants reserve the right to retain expert witnesses subject to Plaintiff's list of expert witnesses and as the need for them arises. Defendants' expert witnesses will be timely announced.

### III.    DOCUMENTARY EVIDENCE

(A)    Plaintiff's documentary evidence:

As of this date, Plaintiffs have identified the following documents that they may introduce as evidence at trial:

An index of the evidence so far identified by the plaintiffs is attached as Plaintiffs' Exhibit A.

(B)    Defendants' documentary evidence:

1.    Edgardo Rodríguez Nieves'personnel file

2.    GDP's Personnel Regulations for Career Employees

3.    Conduct and Ethics Policy for GDP's Employees, No. MPA-0570-01

4.      Xapiens' Computer Forensics Analysis Report dated November 2, 2009 and certain supporting documents.

5.      Permanent Resident Card of Guillermo Camba Casas.

Defendant reserves the right to present additional documentary evidence. Any additional documentary evidence not described above will be timely announced.

## IV.     PROPOSED DISCOVERY

(A).   Plaintiff

Plaintiffs have served on defendants' a First Set of Interrogatories and First Request for Production of Documents.

Plaintiffs will take the depositions of defendants Carlos García, Guillermo Camba Casas, Dr. Luis A. Sánchez and Miguel Collazo from Xapiens Internal, Jorge A. Rivera, Esq.  The parties have separated the following dates for the taking of said depositions: May 5, 6 and 12, 2010.  Plaintiffs will also take the depositions of any and all other factual and expert witnesses announced by the defendants, and of any other person who participated in the decision to terminate the Plaintiff.

(B).   Defendants:

Defendants will serve First Set of Interrogatories and First Request for the Production of Documents as well as Requests for Admissions to Plaintiffs.  In addition, Defendants will take Plaintiff's deposition and that of his wife Co-Plaintiff Lyzette Rodríguez on the one of the following dates agreed to by counsels for all parties, subject to final confirmation of actual dates by Plaintiffs:

April 20, 21, 27 and/or 28, 2010.

Defendant reserves the right to take additional depositions of facts and expert witnesses and to serve additional interrogatories and/or requests for production of documents, if needed.

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, this 22nd day of February, 2010.

**LANDRÓN & VERA, LLP**
Attorneys for Plaintiffs
Centro Internacional de Mercadeo
100 Carr. 165, Torre I, Suite 203
Guaynabo, Puerto Rico 00968
Tel.: (787) 774-5959
Fax: (787) 774-8181


S/: Eileen Landrón Guardiola
**EILEEN LANDRÓN GUARDIOLA'**
**USDC-PR-203006**
**elandron@landronvera.com**


S/: Eduardo Vera Ramírez
**EDUARDO VERA RAMÍREZ**
**USDC-PR-209713**
**evera@landronvera.com**


S/: Luis Rodríguez Muñoz
**Luis Rodríguez Muñoz**
**USDC-PR-214511**
**lrodriguez@landronvera.com**


S/:Maria Santiago Ramos
Maia Santiago Ramos
**USDC-PR-204612**
masantiago@landronvera.com

GUILLERMO SOMOZA
Acting Secretary of Justice

GRISEL SANTIAGO CALDERON
Deputy Secretary of Justice in Charge
of Litigation

WANDYMAR BURGOS VARGAS
Acting Director Federal Litigation
Division

s/ Yadhira Ramirez Toro
YADHIRA RAMIREZ TORO
USDC No. 217208
Attorney for Defendants in their personal
Capacity
DEPARTMENT OF JUSTICE
GENERAL LITIGATION OFFICE
FEDERAL LITIGATION DIVISION
P.O. BOX 9020192
SAN JUAN, PUERTO RICO 00902-0 192
TEL. (787) 721-5636
FAX (787) 723-9188
e-mail: yaelrivka@yahoo.com

**Goldman, Antonetti & Córdova, P.S.C.**
Attorneys for Defendants in their official
capacity
P.O. Box 70364
San Juan, Puerto Rico 00936-0364
Tel. (787) 759-8000, ext. 2227
Fax: (787) 767-9333

s/Luis D. Ortiz Abreu
Luis D. Ortiz Abreu
USDC-PR 122113
e-mail: lortiz@gaclaw.com

s/ Edgardo Colón-Arrarás
Edgardo Colón-Arrarás
USDC-PR 129612
e-mail: ecolon@gaclaw.com