IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDGARDO RODRIGUEZ-NIEVES, *et al.*

Plaintiffs,

v.

CARLOS M. GARCIA, in his individual and official capacities as President of the Banco Gubernamental de Fomento, *et al.*

Defendants.

Civil No. 09-1888 (SEC)

**OPINION & ORDER**

Before the Court are co-defendants Carlos M. Garcia's and Guillermo Camba-Casas' (collectively "Co-defendants") motion to dismiss (Docket No. 63), and plaintiffs Edgardo Rodriguez-Nieves' and Lyzette Rodriguez-Rodriguez's (collectively "Plaintiffs") opposition thereto (Docket No. 67). After reviewing the filings and the applicable law, Co-defendants' motion is **GRANTED.**

**Factual Background**

Rodriguez-Nieves, a former career employee of the Puerto Rico Governmental Development Bank ("GDB"), and his wife Rodriguez-Rodriguez filed this suit under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution as well as under the Constitution and laws of the Commonwealth of Puerto Rico. Docket No. 39.[1] They claim that Co-defendants discriminated, retaliated and conspired against Rodriguez-Nieves, terminating his employment for political reasons. Id. Plaintiffs also claim that Co-defendants violated Rodriguez-Nieves'

---

[1] All references to Plaintiffs' complaint in this opinion relate to their First Amended Complaint. Dockets No. 35, 59.

**Civil No. 09-1888 (SEC)**                                                                                       2

procedural due process rights, and that as result of Co-defendants' illegal conduct toward her husband, Rodriguez-Rodriguez suffered damages. Id.

Rodriguez-Nieves has been an active member of the Popular Democratic Party ("PDP") for more than 20 years. Docket No. 39, ¶ 20. He began working at GDB in 2003 as the Sub-Director of Human Resources and Labor Relations. Id. ¶ 21. In January 2004, he became GDB's Director of Human Resources, occupying the position until November 2007, when he was renamed Sub-Director. Id.

Co-defendant Garcia is GDB's current president, while co-defendant Camba-Casas is GDB's Director of Human Resources. They began working there after the New Progressive Party's ("NPP") win in the November 2008 general elections. Id. ¶ 23. Rodriguez-Nieves' complaint avers that, upon Co-defendants' arrival to GDB, Camba-Casas "took different measures to prevent him from performing his official job duties," and that "[a]s a result of that, [he] was systematically deprived of his core functions." Id. ¶ 24. The complaint also alleges that a subordinate of Rodriguez-Nieves was instructed to report directly to Camba-Casas; that Camba-Casas met with this employee often without inviting Rodriguez-Nieves; and that, on occasions, Camba-Casas addressed work issues with this employee without acknowledging Rodriguez-Nieves' presence. Id. ¶ 25. Furthermore, the complaint states that Camba-Casas openly ignored Rodriguez-Nieves' comments and suggestions during a meeting with union representatives and, that at one point during the meeting, Camba-Casas left to take a telephone call, but did not ask Rodriguez-Nieves to continue the meeting even though that he was present. Id. ¶ 27. Camba-Casas also allegedly took away Rodriguez-Nieves' supervisory duties in connection with the Human Resources Department's archives, "relations with labor unions, relations with directors whom he was called to assist, the representation of GDB in administrative, local and federal courts, the investigation of labor controversies, among others... [all] in an effort to humiliate him." Id. ¶ 29.

**Civil No. 09-1888 (SEC)** 3

On August 27, 2009, Rodriguez-Nieves was suspended indefinitely from work pending a disciplinary investigation for the alleged disappearance of electronic documents at GDB's Human Resources Department. Id. ¶ 29. This suit followed seven days later. Then, on October 21, 2009, Rodriguez-Nieves sent co-defendant Garcia a letter complaining about the process conducted after his suspension, requesting immediate reinstatement, and demanding that "all political persecution against him ceased [sic]." Docket No. 39, ¶ 33. On December 23, 2009, GDB summoned Rodriguez-Nieves for an informal hearing to discuss the events leading up to his suspension. Id. ¶ 34. The hearing was scheduled for December 30, 2009, but on Rodriguez-Nieves' request, it was postponed until January 11, 2010. Id. ¶ 37-38. The complaint recounts events at the informal hearing as follows:

> "[Rodriguez-Nieves'] counsel were not allowed to be present at the hearing notwithstanding they were present at the beginning of the hearing and demanded that plaintiff be assisted of the right to legal counsel. At the alleged hearing Plaintiff was presented with no evidence in support of defendants allegations, but to the contrary, was asked to defend himself against them, and was provided with no opportunity to cross examine the Bank's alleged witnesses."

Id. ¶ 38.

Rodriguez-Nieves was terminated from his employment at GDB in February 2010. Id. ¶ 39. Thereafter, Rodriguez-Nieves continued his claims against Co-defendants on a dual track, one at the administrative level (an appeal of his termination), and the other in this Court. Id. ¶ 42. Here, after different procedural nuances, Co-defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), stating that Rodriguez-Nieves' complaint is devoid of the requisite factual allegations to withstand dismissal under the applicable case law. Docket No. 39. As a result, Plaintiffs relinquished their equal protection and Fifth Amendment claims. Docket No. 67, ¶ 3.  Plaintiffs, however, opposed dismissal of their political discrimination, retaliation, due process, and state law claims, arguing, in essence, that their complaint is legally sufficient. Docket No. 67.

**Civil No. 09-1888 (SEC)** 4

**Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. First Med. Health Plan, Inc. v. CaremarkPCS Caribbean, Inc., 681 F. Supp. 2d 111, 113-114 (D.P.R. 2010) (citing FED.R.CIV.P. 12(b)(6)). When deciding a motion to dismiss under Rule 12(b)(6), the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." First Med. Health, 681 F. Supp. 2d at 114 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In so doing, the court construes the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draws all reasonable inferences in the plaintiff's favor. Id. (citing Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008)); see also Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." First Med. Health, 681 F. Supp. 2d at 114 (citing Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)). Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 129 S.Ct. at 1949. As such, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" First Med. Health, 681 F. Supp. 2d at 114 (citing Iqbal, 129 S. Ct. at 1950 (quoting FED.R.CIV.P. 8(a)(2)).

In sum, when passing on a motion to dismiss, the court must follow two principles: (1) legal conclusions masqueraded as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. (citing Iqbal, 129 S. Ct. at 1950). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the

**Civil No. 09-1888 (SEC)**                                                                 **5**

remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Id.

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965). Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker, 514 F. 3d at 95.

**Applicable Law and Analysis**

*Section 1983*

The Court's analysis begins with 42 U.S.C. § 1983, which is the statutory predicate for vindicating federal rights elsewhere conferred. See Graham v. Connor, 490 U.S. 386, 393-94 (1989). To prove liability under § 1983, a "plaintiff[] must show by a preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). In any event, under § 1983, government officials may only "be held liable if the plaintiff can establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodriguez-Garcia v.

**Civil No. 09-1888 (SEC)** 6

Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007) (internal quotation marks omitted). The plaintiff suit must therefore link each individual defendant to the alleged violation of federal rights. Gonzalez-Piña v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005). Each defendant responds for his own acts or omissions in light of his duties; that is, there is no liability on the basis of *respondeat superior*. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994); Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Furthermore, the defendant's conduct must be shown to be intentional, grossly negligent, or with reckless or callous indifference to the plaintiff's constitutional rights. See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st. Cir. 1986).

*Political Discrimination*

As stated previously, Rodriguez-Nieves' complaint alleges that Co-defendants discriminated against him due to his political affiliation with the PDP. The First Circuit has held that "[t]he right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico, 494 F.3d 1, 4 (1st Cir. 2007) (citing Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973)). As a general rule, "the First Amendment protects associational rights... [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F. 3d 26, 28 (1st Cir. 2004). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; Carrasquillo, 494 F.3d at 4 (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980)). This protection extends to career employees, transitory employees, and independent contractors. Martinez-Baez v. Rey-Hernandez, 394 F. Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)).

**Civil No. 09-1888 (SEC)**                                                                                              7

The First Amendment's protection against political discrimination also extends to other adverse employment actions, such as "promotions, transfers and recalls after layoffs based on political affiliation or support...." Rutan v. Republican Party, 497 U.S. 62, 75 (1990); Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 767 (1st Cir. 2010). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue." Carrasquillo, 494 F.3d at 4 (internal citations omitted); Rodriguez-Garcia, 610 F.3d at 767.

Political discrimination claims must be reviewed through a burden-shifting scheme. Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 287 (1977) (superseded on different grounds). The initial burden rests with the plaintiff, who must first show that "he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." Id.; see also Carrasquillo, 494 F.3d at 4; Padilla v. Rodríguez, 212 F. 3d 69, 74 (1st Cir. 2000). Specifically, to shift the burden to the defendant, a plaintiff must make the following four showings: (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) that the defendant has knowledge of the plaintiff's opposing political affiliation; (3) that there is an adverse employment action; and (4) that there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's actions. Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006); see also Monfort-Rodriguez v. Rey-Hernandez, 599 F. Supp. 2d 127, 168 (D.P.R. 2008). Of course, these four showings must be made by a preponderance of the evidence as to each individual defendant.

In this case, Rodriguez-Nieves' complaint fails to allege facts to shift the burden of proof to Co-defendants. Against Garcia, the complaint's sole factual allegation is that he failed to respond to a letter sent by Rodriguez-Nieves after his suspension. As stated previously, the letter allegedly informed Garcia about Rodriguez-Nieves' dissatisfaction with his suspension

and stated that Rodriguez-Nieves felt politically discriminated against. The letter, however, postdated by several months Camba-Casas' on-the-job behavior toward Rodriguez-Nieves as well as his eventual suspension. At the same time, the letter predated by many months Rodriguez-Nieves' informal hearing and his termination. These are the only events alleged in the complaint that could possibly be classified as "adverse employment actions" for purposes of the Mt. Healthy burden-shifting scheme. Therefore, Rodriguez-Nieves' letter, assuming that Garcia received it and read it, is insufficient to link Garcia to the alleged political discrimination at issue. In other words, Rodriguez-Nieves' complaint contains no factual allegations to allow the Court to infer that his purported "constitutional injury resulted from the direct acts or omissions of [Garcia], or from indirect conduct that amounts to condonation or tacit authorization." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). The political discrimination claim against Garcia is therefore **DISMISSED with prejudice**.

As to Camba-Casas, Rodriguez-Nieves' complaint fails to provide facts to support the allegation that Camba-Casas is a member of an opposing political party. In fact, other than stating that Camba-Casas began working at GDB after the NPP's win in the 2008 elections, Rodriguez-Nieves' complaint contains no averments as to Camba-Casas' alleged ties with the NPP. The Court is cognizant that appointees to positions such as the one held by Camba-Casas generally share the political inclinations of the appointing administration. But at times exceptions to this norm have existed, and Rodriguez-Nieves' complaint contains no allegations whatsoever to allow the Court to ignore this possibility. More important, however, Rodriguez-Nieves' motion opposing dismissal provides no coherent argument or cite any case law to overcome the fact that Camba-Casas is a Spanish citizen who is ineligible to affiliate with a political party or vote in Puerto Rico. Docket No. 63, p. 10. Therefore, Rodriguez-Nieves' complaint has alleged, but it has not shown that Camba-Casas is a member of the NPP. This alone suffices to dismiss Rodriguez-Nieves' political discrimination claim against Camba-

**Civil No. 09-1888 (SEC)**                                                                 9

Casas. See First Med. Health, 681 F. Supp. 2d at 114 (citing Iqbal, 129 S. Ct. at 1950 (quoting FED.R.CIV.P. 8(a)(2)). For these reasons, Rodriguez-Nieves' political discrimination claim against Camba-Casas is **DISMISSED with prejudice**.

*Political Retaliation*

To prevail on a First Amendment political retaliation claim, "a public employee who holds a nonpolicymaking position must show both that he was subjected to an adverse employment action and that his politics were a substantial or motivating factor for that action." Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir, 2009) (abrogated on other grounds). The Mt. Healthy burden-shifting scheme applies to these types of claims. Mt. Healthy, 429 U.S. at 28; see also Ramos-Biaggi v. Martinez, 98 F.Supp. 2d 171, 177-78 (D.P.R. 2000). Therefore, for the same reasons established above, Rodriguez-Nieves' claims of political retaliation are **DISMISSED with prejudice**.

*Due Process*

The Fourteenth Amendment of the U.S. Constitution protects against deprivation of life, liberty, or property without due process of law. U.S. Const. Amend. XIV. The due process guarantee has both procedural and substantive aspects. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). In this case, Rodriguez-Nieves' claims are premised on alleged due process procedural violations; thus, the following discussion is limited to that aspect of due process.

In order "to establish a procedural due process claim under § 1983, a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 29 (1st Cir. 2008). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Rosado De Velez v.

**Civil No. 09-1888 (SEC)**                                                                 10

Zayas, 328 F. Supp. 2d 202, 211 (D.P.R. 2004) (citing Bd. of Regents of States Colleges v. Roth, 408 U.S. 564, 577 (1972).

Under Puerto Rico law, employees classified as "career" or permanent" have vested property rights, and cannot be deprived of these rights without due process of law. Febus-Rodriguez, 660 F.Supp.2d 178. "At a minimum, career employees are entitled to notice and a meaningful opportunity to respond prior to termination." Id.; see also Monfort-Rodriguez, 599 F. Supp. 2d at 168. Before termination, due process requires that "[t]he tenured public employee [receives] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Nevertheless, even when these procedures are deficient, a plaintiff's due process procedural claim fails "[i]f a state provides adequate postdeprivation remedies—either by statute or through the common-law tort remedies available in its courts...." Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996); see also Hudson v. Palmer, 468 U.S. 517, 533 (1984). In fact, "[w]hen a deprivation of a property interest is occasioned by a random and unauthorized conduct of state officials, the Supreme Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of post-deprivation remedies provided by the state." Hadfield v. McDonough, 407 F.3d 11, 19-21 (1st Cir. 2005).[2]

In this case, Rodriguez-Nieves' complaint alleges that the proceedings held before his termination were deficient and violated his due process rights. Nevertheless, his complaint contains no allegations about post-deprivation remedies. Rather, Rodriguez-Nieves' complaint states that he initiated an administrative appeal of the decision terminating his employment and

---

[2] "[A] government official has committed a random and unauthorized act when he or she misapplies state law to deny and individual the process due under a correct application of state law." Id. Co-defendants' alleged actions fall squarely within this definition.

**Civil No. 09-1888 (SEC)**                                                                 11

sets forth claims for damages under Puerto Rico's laws. Accordingly, not only does Rodriguez-Nieves' complaint fails to challenge the post-deprivation remedies available to him, but it also tacitly admits that these remedies are adequate. For these reasons, Rodriguez-Nieves' procedural due process claims are **DISMISSED with prejudice**.

*Supplemental State Law Claims*

Having dismissed Rodriguez-Nieves' federal law claims against Co-defendants, Plaintiffs' state law claims are **DISMISSED without prejudice.** See Newman v. Burgin, 930 F.2d 955, 963 (1 Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.").

**Conclusion**

Based on the foregoing, Co-defendants' motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of February, 2011.